NOV 29 2021 PM 2:09
FILED - USDC - BPT - CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-----------------------------------------------------------------------X

LOUIS HABER and EMILY HABER          Index No. 21-Cv-1348
                                     (KAD)

                    Plaintiffs,

- against -

FIRST BOOK & FILM RIGHTS AUCTION, INC.,
ALVIN ABRAMS, ESTELLE ABRAMS and
ROBERT BERKSON

                    Defendants.
-----------------------------------------------------------------------X

## ALVIN ABRAMS' PRO SE MOTION TO DISMISS
## CLAIMS 1 THROUGH 4, 7, 10 THROUGH 13, AND 15

Alvin Abrams Pro Se

*[signature]*

Alvin Abrams
88 Dingletown Rd.
Greenwich, CT 06830
(203) 869-9580

Prepared With the Assistance of Counsel[1]

---

[1] Consistent with Rule 12(b)(6), this Brief is limited to consideration of the sufficiency of the Complaint as against Alvin Abrams.

## PRELIMINARY STATEMENT

Defendant Alvin Abrams ("Alvin") respectfully moves for an Order dismissing Claims 1 through 4, 7, 10 through 13, and 15, of Plaintiffs Louis Haber and Emily Haber ("Lou", "Emily", collectively "the Habers") against him for failure to state a claim.[2]

According to the Complaint, between May and December of 2018 the Habers invested $209,000 in Defendant First Book and Film Rights Auction, Inc. ("First Book") in exchange for receiving shares equal to a 3.75% interest in First Book. Compl. at ¶¶ 40, 54. First Book was a business which attempted but failed to secure significant book, film and art rights by capitalizing on Alvin's personal views surrounding the Declaration of Independence, the Great Gatsby, the Da Vinci Code, Citizen Kane and other works. Compl. at ¶¶ 36-40. Alvin is alleged to be the President of First Book, and the Complaint sues Alvin, two others, and First Book itself, claiming that the Defendants engaged in fraud and that the Haber's shares are now worthless. Compl. at ¶¶ 7-9.

Sometimes low-probability ideas turn into winning investments. Alas, this is not one of those cases. That does not mean there was a fraud. The allegations show that Alvin had a high degree of confidence in First Book's prospects; confidence which turned out to be misplaced. The Habers admittedly knew that this was a speculative investment. Any reasonable adult would have identified the First Book investment as one with a high probability of failure. There are no allegations that Alvin misrepresented himself as having experience in the book or film industries; or that Alvin made specific

---

[2] Alvin does not move with respect to the Eighth, Ninth and Fourteenth causes of action. For these claims, Alvin will answer those allegations after this Motion is resolved, as permitted by Fed. R. Civ. P. 12(a)(4). *See Gorat v. Capala Bros.*, 257 FRD 353, 366 (E.D.N.Y. 2009). All defenses are reserved in connection with these claims.

1

misrepresentations about First Book's prospects, or the value of the First Book shares the Haber's decided to purchase. The Complaint also lacks any allegation that any specific representation caused the Habers to invest.

It is not enough for the Habers to allege they "fell for" a transparently speculative sales pitch "hook, line, and sinker." Compl. at ¶ 39. Pleading securities fraud with the required specificity requires the pleader to identify specific representations which the pleader justifiably relied upon in investing. Alvin's alleged statements to the Habers concerning the First Book investment were all vague and aspirational. There are no allegations that the Habers were misled by, or relied on, any specific statement by Alvin.

Even if the Habers had properly pled reliance (they did not), it is clear on the face of the pleading that Alvin's statements would not have misled reasonable investors. The Habers themselves describe the business plan which they invested as a "wild-eyed narrative". Compl. at ¶ 38. First Book was hoping to make money based on Alvin's plan "to expose conspiracies and cover ups being propagated for centuries surrounding the *Declaration of Independence* and *The Great Gatsby*." Compl. at ¶ 37. Other ideas included securing rights to undertake a prequel and sequel to *Citizen Kane*, the publication of a previously-unpublished novel by Ernest Hemmingway, a book decrypting secret messages in David McCollough novels, and a book exposing the "lies" of Daniel Brown. *Id.* at ¶ 38. The Habers are far from unsophisticated, as Emily has been practicing law for more than 40 years, and Lou has been investing since 1962.

The short of the matter is that even crediting all the allegations as true, the Habers decided to engage in a transparently high-risk investment and did so without doing any investigation. The Habers do not use their Complaint to explain why they invested, but

presumably the Habers invested in First Book because they saw a possibility of making a lot of money. They cannot now sue Alvin or anyone else for fraud because they have not pled specific misrepresentations for which they reasonably relied. If they were not willing to incur the risk of losing money on such an investment, their conduct was a reckless abdication of common sense.

## LEGAL ARGUMENT
### POINT I

On a motion to dismiss the pleading under Fed. R. Civ. P. 12(b)(6), the plaintiff has the obligation to provide in his Complaint the grounds of her entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do; the factual allegations must be enough to raise a right to relief above the speculative level. In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir.2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.' " *Id.* (citation omitted). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.' " *Id.*

### POINT II
### THE FRAUD PLEADING STANDARD UNDER FRCP 9(b)

Most of the causes of action for which Alvin moves herein allege fraud, including all the federal claims, and the state law claims for fraud, negligent misrepresentation,

3

fraudulent transfer, conversion and civil conspiracy. Pursuant to FRCP 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Rule 9(b) particularity means the who, what, when, where, and how: the first paragraph of any newspaper story." *Walters v. Performant Recovery, Inc.*, 124 F.Supp.3d 75, 79 (D.Conn.2015). In order to comply with FRCP 9(b), the Complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Parola v. Citibank (S. Dakota) N.A.*, 894 F.Supp.2d 188, 200 (D.Conn.2012) (VLB), citing *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir.2004). The Complaint fails to satisfy this standard.

## POINT III

### THERE IS NO CAUSE OF ACTION FOR SECURITIES FRAUD

There are heightened pleading requirements that a plaintiff must meet in a securities fraud case in order to survive a motion to dismiss: compliance with both FRCP 9(b) and the Private Securities Litigation Reform Act ("PSLRA"; 15 U.S.C §78u-4). *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 690 F.3d 98, 108 (2d Cir. 2012). "The PSLRA expanded on the Rule 9(b) standard, requiring that 'securities fraud complaints specify each misleading statement; that they set forth the facts on which [a] belief that a statement is misleading was formed; and that they state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.' " *Id.*

In order to meet the requirements of the PSLRA, the plaintiff must specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and state with particularity the facts giving rise to a strong inference that the

4

defendant acted with the required state of mind. 15 U.S.C. §78u-4(b)(1)-(2).

A.   **No Material Misrepresentation**

A core requirement of any allegation of fraud under Rule 9(b) is that the misrepresentations be specifically set forth. The Habers do not set forth specific, actionable misrepresentations in conjunction with any of their fraud claims. Being that their claims do not allege specific misrepresentations, they also fail to link any misrepresentation to the Haber's decisions to invest. These are core pleading requirements of Rule 9(b) and the PSLRA. The failure to plead a specific misrepresentation linked to an investment decision doom all claims sounding in fraud.

Everything Alvin is alleged to have said to the Habers is vague and/or aspirational puffery. For example, Alvin's alleged prediction that he would "expose conspiracies and cover-ups being propagated for centuries" (Compl. ¶ 37) may have been overly optimistic, but it is not the type of concrete misrepresentation that lends support to a securities fraud claim. Similarly, Alvin's interest in First Book being involved somehow in a prequel and sequel to *Citizen Kane*, or to make money exposing the "lies" of Daniel Brown, or to make money finding hidden meanings in David McCollough books, are not alleged to have been specific representations of a present fact but are rather aspirational. *See Generally* Compl. at ¶¶ 36-40.

Similarly aspirational were Alvin's statements concerning the prospects of lawsuits which were allegedly designed to advance First Book's business prospects. Plaintiffs vaguely allude to "grand promises of a favorable court result" (Compl. at ¶ 56) but there is no specific allegation that Alvin ever promised the Habers a favorable court result, much less made any representation that a favorable result in court would

5

necessarily lead to First Book making a profit. *See Generally* Compl. at ¶¶ 56-72. The Complaint also includes aspirational statements about possibly finding new investors or partners. Compl. at ¶¶ 51-53.

Expressions of hope and optimism are not actionable as misrepresentations sufficient to sustain a securities fraud claim. *See Pipefitters Union Loc. 537 Pension Fund v. Am. Express Co.*, 773 F. App'x 630, 633 (2d Cir. 2019) ("expression[s] of corporate optimism" about partner relationships "did not give rise to securities violations" notwithstanding allegation "these statements implicitly downplayed the risk [of] non-renewal"); *In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 14 (2d Cir. 2019) (rejecting argument that defendants should have "anticipated the outcome of the negotiations sooner or that the negotiations would deteriorate").

There is also a materiality problem with the Haber's Complaint. Any misrepresentation must be material, or it cannot sustain a fraud claim. *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 103 (2d Cir. 2013). Materiality requires that the misrepresented information alter the total mix available in a manner that would be important to a reasonable investor. *Basic Inc. v. Levinson,* 485 U.S. 224 (1988). The representations are immaterial as a matter of law where the representations or omitted facts indisputably add nothing to the information available that reasonable minds would regard as significant. *See Ballan v. Wilfred Am. Educ. Corp.,* 720 F. Supp. 241, 249 (E.D.N.Y. 1989). Here, it is not like Alvin somehow hid that this was a speculative investment. None of the vague expressions of optimism would have been important to a reasonable investor.

The Habers complain that they did not know certain negative aspects of Alvin's history Cpt. at ¶¶ 17-18. Putting aside that it strains credulity for Lou Haber, who has

6

known Alvin since 1962 and claims Alvin mysteriously "disappeared" in the 1990's, to suggest he was in the dark about Alvin's history, what matters here is that Alvin did not materially misrepresent facts concerning his own suitability to be the President of First Book. Any reasonable investor would have understood that Alvin was an octogenarian who did not claim experience in the book or film industries, and who had some difficulty clearly expressing himself in e-mails. *See Exhs.* G, H and I of the Complaint.

Finally, as a matter of law Alvin's alleged guarantees or promises to personally protect the Habers from any loss is not a misstatement of fact sufficient to sustain a fraud claim. There are no allegations that Alvin made any representations about the value of the investment, or any promises that the investment would yield any specific returns or result. If the allegations are true Alvin promised to protect the Habers from loss by paying them if necessary or buying back their shares. At most this could give rise to contractual liability. *See* Compl. at ¶ 36 (alleging the Habers were "contractually permitted" to request repayment "at any time.") A contractual promise cannot be the basis for a fraud claim. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19–20 & n.2 (2d Cir. 1996) (reversing fraud finding because trial judge "equated a failure to carry out contractual obligations with fraud"). Moreover the Habers do not plead scienter, reliance or causation with respect to the alleged guarantees.

**B.     No Scienter**

"[T]o serve the purposes of Rule 9(b)," this Court "require[s] plaintiffs to allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). This "strong inference" may be asserted by "facts to show that defendants had both motive and opportunity to commit

7

fraud," or "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*; *Allstate Ins. Co. v. Advanced Health Professionals, P.C.*, 256 F.R.D. 49, 63 (D. Conn. 2008); *see also Ensign Yachts*, 2010 WL 918107, at *14 (plaintiff failed to satisfy 9(b) because it "merely alleges in conclusory fashion that [defendants] fraudulently concealed" information from it). To allege a "motive and opportunity" to commit fraud, a plaintiff must assert both (a) "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged," and (b) "the means and likely prospect of achieving concrete benefits by the means alleged." *Shields*, 25 F.3d at 1130.

To plead motive, ""[a] general interest in self-enrichment [is] insufficient to satisfy Rule 9(b)'s requirement . . . ." *Allstate Ins. Co.*, 256 F.R.D. at 64. Moreover, to plead a strong inference of scienter, from the pleading facts "a reasonable person [must] deem [the inference] *at least as compelling* as any opposing inference one could draw from the facts alleged." *ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

Here, because the Habers do not even allege a concrete misrepresentation, the Court should not reach the question of whether any misrepresentation was uttered with fraudulent intent. Regardless, the most logical inference from the pleaded facts is that Alvin earnestly tried to turn First Book and the Haber's investment into a success. The Habers implicitly acknowledge that the inference of fraud is a weak one by alluding to the mere "possibility" of a scam. Compl. at ¶ 78. Far more likely on the pleaded facts than a "scam" is that First Book's business failed.

8

According to the pleadings Alvin did a lot of work in connection with his role as President of First Book, including extensive documented litigation activity in furtherance of First Book's business prospects. Compl. at ¶¶ 62, 69-70. According to the Haber's Complaint, one of the lawsuits sought to establish that the Library of Congress's displayed "Declaration of Independence" was not the authentic one, while the other lawsuit attempted to free up the "Great Gatsby" copyright by suing the copyright owners. The lawsuits may have been ill-advised, inaptly prosecuted, or both. Regardless the Habers have given the Court no reason to infer that the lawsuits were part of a scam designed to defraud them.

The Complaint contains no non-conclusory allegation that Alvin profited personally from the Haber's investment. There is simply no inference to be drawn that Alvin took all the steps associated with the First Book business, including extensive litigation activity, in order to defraud the Habers.

**C.     No Reliance, Justifiable Reliance, or Causation**

Reliance and causation are both essential elements of a securities fraud claim which must be plead with particularity. *Dura Pharmaceuticals. Inc. v. Broudo,* 544 U.S. 336, 341, 125 S.Ct. 1627, 1631, 161 L.Ed.2d 577 (2005). The reliance must be reasonable. The law does not favor investors who fail to undertake normal due diligence, safe in the knowledge that they can capitalize on the upside of a transaction and avoid the downside after the fact through a claim that they were defrauded. *Foresters v. Donaldson, Lufkin & Jenrette Sec. Corp.,* No. 95 Civ. 2568 (DAB), 1997 U.S. Dist. LEXIS 13568, at \*\*13-14 (S.D.N.Y. Sept. 5,1997) (holding as a matter of law that "no reasonable juror could find that a reasonable investor or reasonable person would rely on

[the] sales brochures [that were] … on average ten pages long consisting of five to six bullet points per page … in determining whether to buy any type of securities"). In assessing the reasonableness of a plaintiff's alleged reliance, "we consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 235 (2d Cir. 2006) (citation omitted).

*Here*, the Complaint alleges that before any money was invested Alvin expressly "forbade" Emily Haber from contacting him or discussing the investment with any of Alvin's business associates. Compl. at ¶ 43. There is no allegation that Alvin wrote either Haber anything that they relied on, and Emily in particular cannot be heard to complain when Alvin expressly refused to speak with her or provide her access to investment information before she invested her money. And while one would not know it from reading the Complaint or her prior Declaration to the Court, Emily Haber has been a New York attorney for more than forty years.[3] For his part Lou Haber admits he has been investing in stocks since at least 1962. Compl. at ¶ 13. The Habers are not naïfs.

Based on the allegations, prior to the Haber's investment Alvin's alleged aspirational investment pitch was not accompanied by any documents, manuscripts, or financials which discussed any aspect of the First Book business, nor the track record or experience of First Book or Alvin. While the Habers did eventually receive an aspirational business plan (Exh. K to the Complaint); there are no allegations that First Book claimed to have secured any intellectual property rights which could have furthered First Book's business. Alvin claimed no prior experience in the book or film industries

---

[3] The Court should take judicial notice of Emily Haber's New York State Attorney Registration statement, New York State Registration # 1738178.

10

that would suggest he was a logical person to run a business like First Book. To the contrary, the e-mails from Alvin to the Habers which are attached to the Complaint and pre-date the Haber's investment reveal that Alvin had some difficulty expressing himself in writing. *See e,g,* Compl. at ¶¶ 40-43; Exhs. G, H and I.

Under the circumstances the Habers have failed to plead reliance or justifiable reliance. The Habers do not even allege reliance on any specific misstatement. Moreover, even reading the Complaint generously, no reasonable investor would have relied on any of the alleged statements attributed to Alvin. By accepting the fruits of their bargain while failing to allege facts suggesting it performed any reasonable investigation, the Habers do not plead justifiable reliance.

The Habers have also failed to plead that any of Alvin's purported misrepresentations caused the Habers to suffer a loss. The Habers knew the First Book investment was "wild-eyed" and highly speculative from the beginning. Compl. at ¶ 38. The Haber's nevertheless fail to plead with specificity what misrepresentations caused them to invest. Accordingly they do not "plead facts that indicate that the information concealed by the defendant['s] misrepresentations was the reason the transaction turned out to be a losing one." *Dexia SA/NV v. Bear, Stearns & Co.*, 929 F. Supp. 2d 231, 243 (S.D.N.Y. 2013) (citation and internal quotation marks omitted). Moreover, the various purported misrepresentations which are alleged to have been uttered in 2019 and 2020 all occurred after the Habers had invested their monies – such statements could not have caused the Habers to lose their investment. *See* Compl. at ¶¶ 73-78.

**D.  No Control Person Liability**

Plaintiffs have alleged that Alvin and the other "Defendants" are controlling

11

persons under §20(a) of the Exchange Act and, accordingly, that each such Defendant is jointly and severally liable to the Plaintiffs. They make a similar claim under §36-29 of the Connecticut Uniform Securities Act. These claims are fatally deficient.

To make out a Section 20(a) claim, the plaintiff must comply with the pleading requirements of Rule 9(b) and the PSLRA, and must specifically allege, *inter alia,* a primary violation. *See Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004). As discussed in the previous sections, the Haber's have not alleged any primary violations of the Securities Act. As such, they cannot allege control person liability. *Donovan v. American Skandia Life Assurance Corp.,* 96 Fed.Appx. 779, *3 (2nd Cir. 2004), *cert. den.* 543 U.S. 1146 (2005).

## POINT IV

### THERE IS NO STATE LAW CAUSE OF ACTION SOUNDING IN FRAUD, CONVERSION, BREACH OF FIDUCIARY DUTY, OR CIVIL CONSPIRACY

### A. No Fraudulent Transfer Claim

To state a cause of action for fraudulent transfer under the Connecticut Uniform Fraudulent Transfer Act ("CUFTA"), Conn. Gen. Stat. § 52-552e(a)(1), Plaintiffs must allege (1) that there was a transfer of an asset; (2) the debt owed to the creditor arose before such transfer; and (3) the transfer was made with "actual intent to hinder delay, or defraud one or more of [the debtor 's]." *Litchfield Asset Mgmt. Corp. v. Howell*, 799 A.2d 298 (Conn. 2002). In addition, a Plaintiff must plead with particularity the fraudulent mental state of the transferor. *See Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377, 380-81 (D. Conn. 2007) (citations omitted).

All these elements require the pleader to allege at least one transfer. The Complaint does not list a single specific transfer which post-dates 1992. It follows that

12

the Complaint also lacks required detail about the dates, amounts and identities of the parties involved in any transfers. The Complaint is therefore subject to dismissal for lack of particularity. Vague "information and belief" allegations suggesting that Estelle "maintains a bank account in her name" and holds title to a house she owed long before the investments at issue here is inadequate. Compl. at ¶ 130. *See, e.g., O'Neill v. Riversource Life Ins. Co.*, No. 3:10-CV-898 JCH, 2010 WL 3925988, at *3 (D. Conn. Sept. 29, 2010) (dismissing CUTPA claim based "upon information and belief" which was "conclusory and lacks a factual basis from which the court can identify a plausible ... claim"); *Celpaco, Inc. v. MD Papierfabriken*, 686 F. Supp. 983, 991-92 (D. Conn. 1988) (dismissing fraud claim based "upon information and belief" and holding plaintiff "must provide the source of the 'information,' and the reasons on which the 'belief' is founded"). *Accord Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (failure to plead fraudulent transfer with particularity).

### B. No Claim for Breach of Fiduciary Duty or Conversion

The Habers by virtue of their investment in First Book own 3.75% of the Company. Compl. at ¶ 40. A shareholder's claim of breach of fiduciary duty by a director or officer must be brought as a derivative action. A shareholder has standing to bring a derivative action against a third party to redress wrongs suffered by the corporation. *Smith v. Snyder,* 267 Conn. 456, 461–462, 839 A.2d 589 (2004). Any recovery in a derivative action is returned to the corporation, for the benefit of all shareholders. *Id.* An individual "cannot pursue a [direct] cause of action [and recover individually] against third parties for wrongs or injuries to a corporation in which he or she holds stock, even if the stockholder suffers a harm that flows from the injury to the

corporation, such as a reduction in the value of his or her stock." *Peterson v. Parillo,* No. CV030477220S, 2005 WL 3663125, at *1 (Conn.Super.Dec.8, 2005); *Smith,* 267 Conn. at 461–62, 839 A.2d 589 ("It is commonly understood that '[a] shareholder—even the sole shareholder—does not have standing to assert [direct] claims alleging wrongs to the corporation.' ") quoting *Jones v. Niagara Frontier Trans. Auth.,* 836 F.2d 731, 736 (2d Cir.1987); *accord Cohen v. Mirage Resorts, Inc.,* 119 Nev. 1, 21, 62 P.3d 720,733-734 (2003) (applying Nevada law, First Book's alleged state of incorporation (Compl. at ¶ 6) -- "[Plaintiffs] allege that officers, directors or majority shareholders mismanaged the corporation resulting in a loss of revenue. This is harm to the corporation, shared by all stockholders and not related to an individual stockholder."). Because the Habers are not First Book and in fact only own a 3.75% interest, they cannot pursue any individual claim premised on First Book's losses.

The conversion claim has similar flaws. "Conversion occurs when 'one, without authorization, assumes and exercises ownership of property belonging to another, to the exclusion of the owner's rights.'" *HSQD, LLC v. Morinville,* No. 3:11-cv-1225 (WWE), 2012 WL 2088698, at *7 (D. Conn. Jun. 8, 2012) (quoting *Demming v. Nationwide Mut. Ins. Co.,* 905 A.2d 623, 639 (Conn. 2006). "Thus, conversion is some authorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm." *Demming,* 905 A.2d at 639 (citations and internal quotations omitted). Moreover, "conversion requires the owner to be harmed by a defendant's conduct." *Id.*

Here the Complaint lacks any allegation suggesting that Alvin has assumed ownership of property belonging to anybody else, much less the Habers. To the extent

that the Habers are speculating that Alvin somehow misappropriated some of the money the Habers or others invested into First Book, such a claim is not pled and would belong to First Book in any event. *See Meathe v. Ret*, 547 Fed.Appx. 683 (6th Cir 2013) (minority shareholder in dissolved corporation must sue derivatively in the name of the corporation for claims which implicate the other shareholders).

### C. No State Law Claims for Fraud or Negligent Misrepresentation

The common law fraud and negligent misrepresentation claims suffer from many of the same problems which doom the federal claims. Fraud is deception practiced to induce another to part with property or surrender some legal right and which accomplishes the end designed. The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. *Master–Halco, Inc. v. Scillia Dowling & Natarelli, LLC,* 739 F.Supp.2d 109, 114 (D.Conn.2010) (quoting *Weinstein v. Weinstein,* 275 Conn. 671, 685, 882 A.2d 53 (2005). Without reliance, there is no fraud. *See Jacques v. Roy*, 128 A.2d 530, 531 (Conn. 1956).

To plead a claim for negligent misrepresentation, a plaintiff must allege (1) that the defendant made a misrepresentation of fact; (2) that the defendant knew or should have known was false; (3) that the plaintiff reasonably relied upon the misrepresentation; and (4) that the plaintiff suffered pecuniary harm as a result thereof. *Trefoil Park, LLC v. Key Holdings, LLC*, No. 3:14–CV–00364 (VLB), 2015 WL 1138542, at *12 (D.Conn. Mar. 13, 2015), *citing Glazer v. Dress Barn, Inc.,* 873 A.2d 929, 954 (2005).

As discussed in connection with the federal claims, the Complaint has no well-

15

pled allegations of any misrepresentation against Alvin, and no specific claims of reliance, reasonable reliance or loss which are related to Alvin's conduct. These same problems doom the state law fraud and negligent misrepresentation claims.

### D. No Claim For Civil Conspiracy

Connecticut does not allow standalone claims for civil conspiracy. "[A] claim of civil conspiracy must be joined with an allegation of a substantive tort." *Macomber v. Travelers Prop. & Casualty Corp.*, 277 Conn. 617, 636 (2006) (emphasis and alteration in original, citation omitted). To succeed on a claim of civil conspiracy, a plaintiff must prove the following elements: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff. *Id.* at 635-36 (citation omitted).

Here, there are no non-conclusory allegations that Alvin agreed with either of the other Defendants, or anybody else, to do anything unlawful concerning First Book's operations.

### CONCLUSION

For the foregoing reasons, Defendant Alvin Abrams respectfully requests that the Court dismiss Claims 1 through 4, 7, 10 through 13, and 15.

Dated: November 29, 2021

Alvin Abrams
Pro Se

16

17

CERTIFICATE OF SERVICE I hereby certify that a copy of the foregoing pleading/document was mailed on November 29, 2021 to:

Philip Giordano
Giordano & Company, P.C.
47 Winter Street, Suite 800
Boston, MA 02108-4774
617-723-7755

Thomas P Tabellione
35 Pearl Street
New Britain, CT 06051
860-224-3173

James T. Shearin
Pullman & Comley
850 Main St., Po Box 7006
Bridgeport, CT 06601-7006
203 330 2000

David Rubin
Law Offices of David W. Rubin
600 Summer St Suite 201
Stamford, CT 06901
(203) 353 1404

**Alvin Abrams**