JAN 3 2022 PM 12:03
FILED - USDC - BPT - CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
----------------------------------------------------------------X

LOUIS HABER and EMILY HABER                    Index No. 21-Cv-1348
                                               (KAD)

                    Plaintiffs,

    - against -

FIRST BOOK & FILM RIGHTS AUCTION, INC.,
ALVIN ABRAMS, ESTELLE ABRAMS and
ROBERT BERKSON

                    Defendants.
----------------------------------------------------------------X

### ALVIN ABRAMS' PRO SE REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS CLAIMS 1 THROUGH 4, 7, 10 THROUGH 13, AND 15

Alvin Abrams Pro Se

*[signature]*

Alvin Abrams
88 Dingletown Rd.
Greenwich, CT 06830
(203) 869-9580

Prepared With the Assistance of Counsel

## **PRELIMINARY STATEMENT**

Defendant Alvin Abrams ("Alvin") respectfully submits this Reply Brief in further support of his Motion for an Order dismissing Claims 1 through 4, 7, 10 through 13, and 15, of Plaintiffs Louis Haber and Emily Haber ("Lou", "Emily", collectively "the Habers") against him for failure to state a claim. This Reply Brief responds specifically to the Habers' Opposition Brief dated December 20, 2021 ("Haber Brief").

The Haber Brief is light on citations to the Complaint. The reason is obvious enough: the Habers did not plead fraud with particularity. Among other problems, the Habers failed to link an alleged misrepresentation with their respective decisions to invest.

The Habers address this by arguing that Plaintiffs invested because Lou Haber "trusted" Alvin and because Alvin allegedly provided personal guarantees. *See* Haber Brief at 11 ("Had Mr. Haber not had a previous relationship of trust and confidence with Abrams, and had Abrams not provided any guarantees, the Habers would never have invested in First Book."). This is not sufficient for three reasons. ***First,*** it is axiomatic that a plaintiff cannot utilize a brief opposing a motion to dismiss to amend a complaint. *See Peacock v. Suffolk Bus. Corp.*, 100 F.Supp.3d 225, 231 (E.D.N.Y. 2015) (citations omitted).

***Second,*** even if the Haber's attempt to amend their Complaint via legal brief were considered, all it would show is that Alvin's alleged misrepresentations related to First Book's business prospects were not material misrepresentations at all, as the Haber's did not rely on them, and they did not cause the Habers to invest. The Habers now argue that

1

they relied on the contractual guarantees, not anything Alvin said about First Book. This might support a claim for breach of those alleged guarantees. But the Habers do not have any fraud or other tort claim because their entire claim is premised on an alleged breach of contract. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19–20 & n.2 (2d Cir. 1996) (a failure to perform a contractual promise is not fraud). The Haber Brief did not distinguish or otherwise address *Bridgestone/Firestone*.

***Third***, the Haber's argument that they "trusted" Alvin relies in large measure on their tale that Alvin and Lou were extremely close in the early 1990's until Alvin "mysteriously disappeared" without disclosing any criminal problems. It is now clear that Lou Haber is lying about this. The Court can and should take judicial notice of Lou Haber's 1997 Affidavit which directly contradicts his present story. In fact, Lou Haber was almost immediately aware of Alvin's arrest and acted to move his assets with the assistance of Alvin's attorney at the time. His 2021 story is perjurious. The fraud claims cannot be sustained with reference to allegations which are contradicted by Lou Haber's prior testimony.

## POINT I

### THE HABERS CANNOT AND DO NOT LINK ANY ACTUAL MISREPRESENTATION TO THEIR DECISIONS TO INVEST

Page 8 of the Haber Brief lists six alleged misrepresentations in bullet points. The first bullet point is an alleged "plan" to "expose conspiracies and cover-ups being propagated for centuries…" that would turn a profit of $50,000,000. The Habers did not plead precisely what Alvin said, nor the circumstances surrounding the alleged statement. To the extent a precise statement can be approximated by the pleading, the alleged statement is by its very nature aspirational. There is no promise. Even if there were,

2

nobody could reasonably rely on a "promise" that $50,000,000 would be earned. Nor would such a "promise" be material to a reasonable investor. At a bare minimum such a statement would cause a reasonable investor to raise an eyebrow or two. But there are no alleged facts suggesting that the Habers took any investigatory steps other than exhibiting "trust" in Alvin.

The second bullet point is an alleged promise to use the investment monies for business purposes only. There is no non-conclusory allegation that the Haber's investment monies were used for anything other than business purposes, nor that the representation was knowingly false when made. Moreover, there is no allegation that this alleged misrepresentation caused the Habers to invest.

The third bullet point discussed an aspirational "Plan of Investment." Contrary to the Haber's insinuation, nowhere in the "Plan of Investment" did Alvin represent or promise a $25,000,000 return in the first year. Rather, the "Plan of Investment" which is Exhibit K to the Complaint, wrote "[A] Project capable of generating a $25,000,000+ return in its first year of operation is seeking $5,000,000 funding for a 33.3% interest." Exh. K. at 1. This "capable of generating $25,000,000+" language is vague and aspirational. There is no concrete promise. Nor did this statement cause the Habers to invest. There are also no allegations of reliance or reasonable reliance on this representation.

The fourth bullet point concerns an alleged personal guarantee which is, at most, redressable as a contract claim. *See* Point III, *infra*.

The fifth bullet point speaks of planned meetings with hedge fund executives and preparations to raise money through additional stock offerings. There are no allegations

3

that these efforts were not genuine. There are also no allegations that the meetings with hedge fund executives did not happen, much less that they were not genuinely contemplated. Rather the Habers want the Court to assume that the representations were false because the investment was lost. As Alvin showed in his Opening Brief, expressions of hope and optimism about such meetings are not actionable as misrepresentations sufficient to sustain a securities fraud claim. *See Pipefitters Union Loc. 537 Pension Fund v. Am. Express Co.*, 773 F. App'x 630, 633 (2d Cir. 2019).

The sixth bullet point is an alleged misrepresentation from September 2019, where Alvin allegedly told the Haber's he was working on getting them a meaningful profit. This cannot support a securities fraud claim because September 2019 was long after the Haber's had invested their money. Since the Haber's had already invested, the representation could not have been material to their decision to invest. Moreover, there are no non-conclusory allegations that the statement was false, much less facts giving rise to a strong inference of scienter.

## POINT II

### THE HABERS CANNOT SUSTAIN THEIR FRAUD CLAIMS BASED ON ALVIN'S ALLEGED FAILURE TO DISCLOSE HIS PRIOR CRIMINAL CONVICTION, BOTH BECAUSE THE HABERS ARE DEMONSTRABLY LYING, AND BECAUSE DEFENDANTS HAD NO OBLIGATION TO DISCLOSE

The Habers argue that Alvin's alleged hiding of a past criminal conviction is reason enough to sustain their fraud claims. Haber Brief at 13. The Habers are lying. More specifically Lou Haber perjured himself a few weeks ago when he swore to this Court that Alvin "just disappeared" in the 1990's, causing Lou to make unsuccessful efforts to "get in touch with him and find out what happened." Docket Entry #56, Attachment #1, Haber December 5, 2021, Affidavit at ¶ 7. Lou observed that it was

4

unlike Alvin to disappear without explanation. Unable to reach Alvin, Mr. Haber claims he "decided to move on" with his investment portfolio. *Id.* at ¶¶ 6-7. Alvin "mysteriously reappeared" in about 1996, blaming his absence on "major health issues." *Id.* at ¶ 8.

Not true. Attached to Alvin's accompanying Declaration is an Affidavit Lou Haber submitted in connection with Alvin's criminal case in 1997. In 1997 Lou testified that he learned about Alvin's arrest shortly after it happened in 1992; and thereafter consulted with Alvin's attorney to ensure that his own assets were not ensnared in the resulting criminal case. Lou Haber 1997 Aff. at ¶¶ 5-6. These consultations were successful as Lou's securities were returned to him in 1993. *Id.* at ¶ 9. Four years later Lou Haber submitted the 1997 Affidavit. Thus Lou did not "decide to move on" with his retirement portfolio after Alvin "mysteriously disappeared" and Lou's efforts to "find out what happened" failed. Rather Lou received prompt notification of Alvin's arrest and took protective measures with the assistance of Alvin's attorney to move his investments somewhere else.

The Court should take judicial notice of Lou Haber's 1997 Affidavit. Courts considering a 12(b)(6) motion routinely take judicial notice of court documents which were filed in prior cases, not for the truth of the statements contained in the documents, but to prove that the statements were actually made. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings."); *cf. Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987) (albeit at the summary judgment stage,

5

a party cannot sustain claim when affidavit contradicted prior testimony). Moreover, the Court should consider the 1997 Affidavit even though it is submitted on Reply, as Alvin just located Lou's 1997 Affidavit, and Lou submitted his perjurious December 5, 2021, Affidavit to this Court after Alvin moved to dismiss.

This is no innocent mistake nor lack of recollection. Lou Haber did not forget the arrest of his longtime stockbroker whom he characterizes as being a once "close personal friend", nor did he forget that the arrest caused Lou to have concern over his investment portfolio, which led to Lou consulting with Alvin's attorney and then moving his retirement assets somewhere else. He learned of Alvin's arrest in 1992 and spoke in detail about it in his 1997 Affidavit. He cannot plausibly pretend he knew nothing about Alvin's criminal problems while concocting a tale about Alvin's "mysterious disappearance"; in fact, he knew all along and is now lying in hopes of sustaining a fraud claim. Moreover, the Habers fabricate this story in order to focus the Court on Alvin's conviction, which was based on conduct which took place thirty years ago and has nothing to do with what happened here. The Court should not sustain a fraud claim supported by nothing other than an irrelevant conviction, much less perjurious testimony about it.

Lou Haber's 1997 Affidavit also puts the lie to the Haber's assertion that they had a pre-existing relationship of "trust" with Alvin such that they could ignore the transparently speculative nature of the First Book investment. Not only did Lou have to move his own assets after hearing of Alvin's 1992 arrest, but by the Haber's reckoning they did not hear from Alvin at all from 1998 until 2018, when Alvin allegedly contacted Lou "out of the blue." Haber Brief at 4. Having had to move his money in 1993 in the

6

face of Alvin's arrest, and having not heard from Alvin for two decades, there was no relationship of trust and confidence that plausibly explains the Haber's decisions to invest in 2018. Nor can the Habers point to some "special" relationship with Alvin to excuse their obligation to perform their own due diligence into what was obviously a speculative investment.

Even putting aside Lou Haber's lying under oath, as explained in the Opening Brief Alvin's decades-old conviction would not have been material to a reasonable investor. Opening Brief at 6. The Haber Brief does not address this point. The failure to disclose a criminal conviction must be a material omission. *See Highlands Ins. Co. v. PRG Brokerage, Inc.*, 2004 WL 35439 at *4 (S.D.N.Y. Jan. 6, 2004) ("Even assuming the truth of the…allegations [regarding the failure to disclose a prior felony conviction and lack of a broker license], they are not material to the injury about which [plaintiff] complains").

## POINT III

### THE HABERS CANNOT SUSTAIN THEIR FRAUD CLAIMS BASED ON ALLEGATIONS THAT ALVIN HAS BREACHED A CONTRACT

In the Opening Brief, Alvin showed as a matter of law that his alleged guarantees or promises to personally protect the Habers from any loss sound at best in contract, not fraud. Alvin relied primarily on *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19–20 & n.2 (2d Cir. 1996), where the Second Circuit reversed a fraud finding because the trial judge "equated a failure to carry out contractual obligations with fraud". The Habers do not distinguish *Bridgestone/Firestone*. While

7

*Bridgestone/Firestone* applied New York[1] law, the applicable law is the same in Connecticut. *See Tucci v. Jones,* 2021 Conn. Super. LEXIS 699, at *3 (dismissing fraud claim as redundant of breach of contract claim where allegation was that defendant never intended to pay on promissory note).

The Habers argue that a "promise to do an act in the future, when coupled with a present intention not to fulfill the promise, is a false representation." Haber Brief at 21. This is not the case when the supposedly unfulfilled promise is the subject of an alleged contract. *See Tucci v. Jones,* 2021 Conn. Super. LEXIS 699, at *3 (rejecting fraud claim where "there is no allegation that the defendant misrepresented any fact other than the very promise which, the plaintiff would claim, the defendant is seeking to evade."). Moreover, the Habers have not pled any facts supporting the notion that Alvin did not intend to guaranty the Haber's investment at the time of the alleged guaranty, particularly if the conditions of the guaranty had been met. As such they have not pled a misrepresentation or scienter in connection with the alleged guaranty.

## POINT IV

### THE HABERS DO NOT ALLEGE FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER

The Haber's argument on scienter (Haber Brief at 9-10) points to no facts suggesting Alvin acted with the requisite mental state sufficient to allege scienter. The most logical inference from the pled facts is that First Book had an obviously high-risk business plan which could not have been concealed even if Alvin had tried to conceal it. The plan did not work out as Alvin or the Habers had hoped. It is not enough to

---

[1] Because New York and Connecticut law are similar on this point, determination of the Motion to Dismiss does not require the Court to determine whether New York (where Plaintiffs reside) or Connecticut (where Alvin resides) law applies.

conclusorily call the First Book investment a "scam". Scienter is not alleged because the Habers do not identify any specific information withheld from them (other than the criminal conviction under circumstances where Lou Haber is clearly lying, see Point II, *supra*). Instead the Haber's gripe is that Alvin touted an investment which turned into a loser. Courts do not sustain allegations which are based on nothing other than hindsight. *See Cox v. Blackberry, Ltd.,* 660 Fed. Appx. 23 *4 (2d Cir. 2016) (rejecting fraud claim for failure to plead scienter when the main gripe was that the investment was lost, and plaintiff could not identify specific information that was withheld from it).

## POINT V

### THE HABERS LACK STANDING TO ASSERT CLAIMS WHICH, IF THEY EXIST AT ALL, BELONG TO THE CORPORATION

The Haber's brief completely ignores the fact that their allegations of corporate mismanagement or misappropriation of corporate assets, to the extent viable at all, belong to First Book. It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims defeated by the argument. *Wilkov v. Ameriprise Fin. Servs., Inc.,* 753 F. App'x 44 (2d Cir. 2018) ("We affirm the District Court's dismissal of those claims on the ground that they were 'abandoned' by Wilkov when she failed to oppose them in her opposition to Ameriprise's motion to dismiss.").

The Haber's failure to address this argument dooms both their conversion claim and their breach of fiduciary duty claim. It is also noteworthy that the fraudulent transfer claim in the Complaint was focused on non-specific allegations about speculated transfers between Alvin and Estelle, while the Haber Brief focuses on non-specific

9

allegations about speculated transfers between First Book and Alvin. Once again, the Habers cannot amend their Complaint through legal briefing. But whether viewed as alleging transfers between individuals or transfers amongst First Book and Alvin, the Haber's have failed to plead any specific transfers, or address any of Alvin's arguments favoring dismissal of the fraudulent transfer claim.

Finally, the Haber's argument in support of piercing the corporate veil is inconsistent with the allegations in the Complaint. Haber Br. at 15-16. The Habers alleged that in addition to Alvin there were two other "control persons" and that Defendant Berkson had "controlling shares". Cpt. at ¶¶ 93, 113. In the face of these allegations the Haber's cannot now argue that Alvin dominated First Book to such an extent that the corporate form should be ignored. Moreover, even if Alvin could be said to dominate First Book and to have used this domination to perpetuate some wrong, this would make First Book the appropriate plaintiff, not the Habers. This point is confirmed in one of the Haber's own cases. *See Horwitt v. Saroff,* 2020 U.S. Dist. LEXIS 166497, *25-26 (citation omitted) (cited in Haber Brief at 15) ("When transfers are made by corporations that are completely controlled by the wrongdoer, 'the transfers were, in essence, coerced.'. . . The corporation then becomes the creditor in the coerced transaction and a receiver for the coerced corporate (sic) has standing to claw back the transfers."). Thus the "corporation becomes the creditor" when an individual misuses the corporate form to misappropriate corporate funds.

This is not what the Habers seek when they discuss "veil piercing". Rather the Habers want to create direct liability in their favor against Alvin for any corporate mismanagement, without regard to other shareholders. For reasons set forth in the

10

Opening Brief, such a claim must be brought derivatively on behalf of the corporation.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Opening Brief, Defendant Alvin Abrams respectfully requests that the Court dismiss Claims 1 through 4, 7, 10 through 13, and 15.

Dated: January 3, 2022

Alvin Abrams
Pro Se

CERTIFICATE OF SERVICE I hereby certify that a copy of the foregoing pleading/document was mailed via Federal Express on January 3, 2022, to:

Philip Giordano
Giordano & Company, P.C.
47 Winter Street, Suite 800
Boston, MA 02108-4774
617-723-7755

Thomas P Tabellione
35 Pearl Street
New Britain, CT 06051
860-224-3173

James T. Shearin
Pullman & Comley
850 Main St., Po Box 7006
Bridgeport, CT 06601-7006
203 330 2000

11

David Rubin
Law Offices of David W. Rubin
600 Summer St Suite 201
Stamford, CT 06901
(203) 353 1404

_____
**Alvin Abrams**

12