UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------------------X

LOUIS HABER and EMILY HABER            Index No. 21-Cv-1348
                                                              (KAD)

                                                              February 7, 2022

                              Plaintiffs,

    - against -

FIRST BOOK & FILM RIGHTS AUCTION, INC.,
ALVIN ABRAMS, ESTELLE ABRAMS and
ROBERT BERKSON



                              Defendants.
_____X

## FIRST BOOK & FILM RIGHTS AUCTIONS, INC.'s
## MOTION TO VACATE ENTRY OF DEFAULT

    First Book & Film Rights Auctions, Inc., sued here incorrectly as First Book & Film Rights Auction, Inc., upon the annexed Exhibits and Memorandum of Law, and upon the accompanying Declaration of Alvin Abrams, hereby moves for an order pursuant to Rule 55(c) of the Federal Rules of Civil Procedure vacating the Entry of Default dated December 14, 2021, and such further relief as this Court may deem just and proper.

                                           *Daniel Abrams*
                                           Daniel L. Abrams Fed. Bar # ct31248

                                           Law Office of Daniel L. Abrams, PLLC
                                           1250 Broadway, 36th Floor
                                           New York, New York 10001
                                           Telephone: (646) 821-4575
                                           E-mail: dan@lawyerquality.com

## BRIEF IN SUPPORT OF FIRST BOOK & FILM
## RIGHTS AUCTIONS, INC.'s MOTION TO VACATE ENTRY OF DEFAULT

Defendant First Book & Film Rights Auctions, Inc., sued here incorrectly as First Book & Film Rights Auction, Inc. ("First Book") respectfully submits this Brief in support of its Motion requesting an order directing the clerk to set aside the Certificate of Default entered by the Clerk's Office on December 14, 2021.

First Book is a revoked Nevada Corporation which served as the corporate vehicle for a high-risk investment that failed. The President and sole Director of First Book is individual defendant Alvin Abrams ("Alvin"), who will turn 87 next month. Plaintiffs' motion for a default judgment is not a sincere effort to collect judgment from a defendant with any liability, but a harassment ploy against the individual defendants Alvin and Estelle Abrams, both of whom have appeared and have pending motions to dismiss.

Courts considering whether to set aside a default will vacate the default if "good cause" exists. *See Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir. 1994). Courts evaluate three criteria in making the "good cause" determination (1) whether the default was willful or not, (2) whether plaintiff will suffer prejudice, and (3) whether the defendant sets forth meritorious defenses. *Id.* Courts also have discretion to consider equitable factors. Courts apply these factors "more rigorously" and are therefore less likely to excuse a default once default judgment has been granted. Defaults are "generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* at 95; *accord Western Surety Co. v. Leo Constr. Co., LLC,* 2013 WL 144097 (D. Conn. 2013). Because of the general disfavor of resolving cases by

1

default, "[e]ven if one factor weights against vacating the default, if the other factors support it, the presumption in favor of resolution on the merits requires that the court vacate the default" *Kuklachev v. Gelfman*, 2009 WL 497576, *2 (E.D.N.Y. 2009) (vacating default despite finding of willfulness where defenses to cross-claims appeared to have merit and there was no prejudice to the plaintiff); *accord Buffalo Bills, LLC v. Caccamo,* 2020 WL 4933675, *1, at *3 (W.D.N.Y. Aug. 24, 2020).

Here, all factors lean heavily towards setting aside the default. **First,** First Book's default was not willful, as due to age, diminished capacity and a history of pro se filings which were gratuitously highlighted by the Plaintiffs, Alvin was unable to secure the services of a lawyer until his adult son Daniel was admitted to the District of Connecticut. While Alvin was able to appear and file motion papers with the assistance of non-appearing counsel, this option was not available for First Book, of which he is the sole Director. **Second**, Plaintiffs will suffer no prejudice if the Court sets aside the default, given that the individual defendants have not even answered the pleading yet. **Third,** First Book has obvious defenses against all the claims; Plaintiffs do not properly plead a single claim against First Book. **Fourth,** the Habers have lied to this Court and been caught in the lie. Equity does not favor granting discretionary relief to the Habers.

### I. FIRST BOOK'S DEFAULT WAS NOT WILLFUL

Willfulness for the purposes of default refers to conduct that is more than merely negligent or careless. *Belizaire v. RAV Investigative and Sec. Services, Ltd.* 310 F.R.D. 100, 104 (S.D.N.Y. 2015) (citing *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1988)). A finding of willfulness requires the Court to conclude that the defendant has no

reasonable explanation or justification for the default. *See Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.,* 2020 WL 6390162, *1, at *5 (E.D.N.Y. Nov. 2, 2020). Doubts about willfulness are resolved in a defendant's favor. *HICA Educ. Loan Corp. v. Feintuch*, 2013 WL 1898997, at *4 (E.D.N.Y. May 7, 2013).

While parties including corporations are responsible for securing counsel, courts will consider unusual difficulties in securing or communicating with counsel as a factor which militates against a finding of "willfulness." *See Baykeeper, Inc. v. Shinnecock Baykeeper, Inc.,* 2006 WL 436015, at *2 (E.D.N.Y. 2006); *United States v. $135,290 U.S. Currency*, 750 F.Supp. 359, 361 (N.D. IL 1990).

Here, Alvin will turn 87 next month. He was unable to secure counsel on his own, or any other counsel outside of his immediate family, due to his own mental and physical limitations as well as his history of pro se filings. His son Daniel undertook considerable efforts to procure counsel for Alvin and First Book, and failing to find willing counsel, applied for admission to this Court. Once admitted this past Friday, Daniel entered an appearance and filed this Motion the next business day. *See Generally* Affidavit of Daniel L. Abrams Dated January 31, 2022, attached hereto as part of Exhibit A.

The Court should also consider the Plaintiffs' own role in making it difficult for First Book to secure counsel. A corporation cannot appear in a lawsuit without counsel. Plaintiffs stressed in their Complaint Alvin's considerable pro se filings in other litigation in 2018 and 2019, dedicating seventeen paragraphs to highlighting them (Haber Complaint at ¶¶ 56-72, attached hereto as Exhibit B) and characterizing one of them as "the confused jumbled rant of a lunatic." Haber Complaint at ¶ 72. According to the

3

Habers, Alvin filed fourteen (14) Amended Complaints in one of the two cases. Haber Complaint at ¶ 62.  The pro se filings do suggest that Alvin was operating at limited capacity at the time, and raise serious questions to be explored in discovery as to why the Habers invested in the first place, and continued to invest after many of these filings were publicized.  Still, the Haber's focus on the pro se filings was unnecessary in the context of what they were trying to plead.  Their extended gratuitous commentary concerning the pro se pleadings had the effect, if not purpose, of making it very difficult for Alvin and First Book to secure counsel.

## II. PLAINITFFS WILL NOT SUFFER PREJUDICE IF THE DEFAULT IS SET ASIDE

Plaintiffs will suffer no prejudice if the default is set aside and First Book is permitted to answer the pleading.  The only alleged prejudice noted in Plaintiffs' Motion for a Default Judgment is that Plaintiffs are "elderly" and would have to litigate the action.  Delay alone, or a plaintiff having to litigate a case on the merits, does not constitute prejudice.  *Enron Oil Corp.,* 10 F.3d at 97.  Regardless, the delay to the overall case is negligable here, given that the individual defendants all have pending motions to dismiss, and the case is automatically stayed under the PSLRA pending resolution of the Motion practice or further order of the Court.  No individual Defendant has answered the Complaint.  Discovery has not started.  The Court can, in its discretion, place First Book on the exact same track for discovery as the individual Defendants, none of whom defaulted.

Plaintiffs' claims that their advanced age should be a factor cuts the other way to the extent it matters at all.  Plaintiffs are 69 and 82, while Alvin turns 87 next month, and Estelle is 85.  Plaintiff Emily Haber is by far the youngest individual Plaintiff, and while

4

she failed to disclose as much to the Court she has been a New York State-licensed attorney for more than 40 years. Exh. F, Declaration of Alvin Abrams dated February 7, 2022 at ¶ 4. She has the right to sue people more than 15 years older than her, but she cannot claim defendants have taken advantage of her because of her advanced age. More to the point, courts favor merits-based determinations of lawsuits regardless of the age of the litigants. There is no delay associated with vacating First Book's default, much less a delay that causes any cognizable prejudice to the Plaintiffs.

### III. PLAINTIFFS STATE NO CAUSE OF ACTION AGAINST FIRST BOOK

Defaults should be set aside where the complaint fails to state a claim against the defaulting defendant, or even where the merits are doubtful. *See e.g., Pinaud v. County of Suffolk,* 52 F.3d 1139, 1152 n. 11 (2d Cir. 1995). Entry of a default "is not…tantamount to an admission of the legal conclusions asserted in the complaint, and accordingly, even if an order of default is entered, the court must still determine whether the factual allegations adequately plead a cognizable claim." *Farberware, Inc. v. Groben,* 1991 U.S. Dist. LEXIS 8994, at *24-25 (S.D.N.Y. July 3, 1991).

Since First Book's purported liability is premised on Alvin's alleged actions, First Book respectfully incorporates Alvin's Motion to Dismiss (Exh. C), Alvin's Reply in Further Support of Motion To Dismiss (Exh. D), and Alvin's Objection to Plaintiffs' Motion for a Default Judgment (part of Exh. A), each prepared with the assistance of counsel. We will not repeat all the arguments here. Rather, each of those submissions are incorporated herein and specify why Plaintiffs have set forth no federal or state securities fraud or common law fraud claims, no breach of fiduciary duty claims, no

conversion claims, no fraudulent transfer claims, no negligent misrepresentation claims, and no civil conspiracy claims.

While Alvin did not move to dismiss the contract-based claims (i.e., claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment), Plaintiffs have failed to plead any breach of contract against First Book. Each of the purported guarantees sued on are individual, personal guarantees made by Alvin only. *See* Exh. E (purported guarantees referred to in Haber Complaint). Personal guarantees are just that – they are personal to the person who signed them and do not bind others. Here the alleged guarantees do not bind First Book, nor can any of them be construed in that fashion. Guarantees are strictly construed according to their terms and will not be extended beyond the plain and explicit language of the contract. *See Chase Manhattan Bank v. American Nat'l Bank & Trust Co. of Chicago*, 93 F.3d 1064, 1073 (2d Cir. 1996). Everywhere there is an alleged guaranty it is expressly limited to Alvin, personally. At no point did First Book agree to guarantee anything.

The lack of an enforceable, written guaranty also dooms the "covenant of good faith and fair dealing" claim as well as the "unjust enrichment" claim. The duty of good faith and fair dealing is "a covenant implied into a contract or a contractual relationship." *Landry v. Spitz,* 102 Conn.App. 34, 42, 925 A.2d 334 (2007). Plaintiffs had no contract with First Book that entitled it to any security if the investment failed. Lacking such a contract, they cannot create contractual liability out of thin air by suggesting a breach of an implied covenant. Similarly unjust enrichment liability cannot accrue on the theory that First Book should have guaranteed an investment it did not guarantee. *See Gianetti*

6

*v. Gerardi,* 44 A.3d 911 (2010) (Super. Ct. Fairfield) (no unjust enrichment liability where parties did not reach agreement on payment).

Finally, while the Court need not reach the issue of Alvin's potential liability since First Book did not guarantee anything and Alvin has not yet answered the contract allegations, even with respect to Alvin, the Habers fail to allege performance with the May 14, 2018 Guarantee. On its face, the Guarantee was conditional, requiring the Haber's "not to contact anyone within 120 days" of the investment. The Haber's fail to allege or otherwise assert performance with this condition, which is an essential element of their contract claim. *See Meyers v. Livingston, Adler, Meikejohn & Kelly, P.C.,* 311 Conn. 282, 291 (2014). Indeed, each of the purported guarantees contain conditions or qualifications, and in each instance the Habers have not pled or proven facts sufficient to trigger the purported guarantees. Moreover, any purported guaranty made in November of 2019 was a full year after the Haber's had completed their investment. The Haber's have not pled nor asserted what the consideration was for this so-called guaranty.

### IV. BECAUSE PLAINTIFFS HAVE LIED TO THE COURT, EQUITY FAVORS SETTING ASIDE THE DEFAULT JUDGMENT

With assistance of counsel, Alvin has previously detailed the contradictions between Lou Haber's 1997 Affidavit and Lou Haber's Affidavit in this case. *See Generally* Exhs. A and D. In a nutshell, Lou Haber fabricated a story about Alvin "disappearing" in the 1990's in order to mislead the Court into thinking he did not know about Alvin's criminal problem from that decade. The lie was exposed more than a month ago when Alvin submitted Lou Haber's Affidavit from 1997, which Lou Haber prepared in connection with Alvin's criminal case. The 1997 Affidavit reveals that Lou Haber learned about Alvin's arrest in 1992 and thereafter consulted with Alvin's attorney

7

to ensure that his own assets were not ensnared in the resulting criminal case. Exh. D at 5-7. These consultations were successful as Lou's securities were returned to him in 1993. This Affidavit directly contradicts Lou's story in this case, where he claims Alvin "disappeared" without explanation in the 1990's, such that Mr. Haber "decided to move on" with his retirement assets. *Id*. Emily Haber represented Lou in the preparation of his 1997 Affidavit, and she is therefore also deliberately trying to mislead the Court by suggesting that Alvin "disappeared" in the 1990's and failed to disclose his criminal problem. Exh. F, Declaration of Alvin Abrams dated February 7, 2022 at ¶ 5.

Notably, Alvin pointed out this massive inconsistency more than a month ago, and the Habers, despite voluminous filings since, have not even attempted to explain away the inconsistency between Lou Haber's 1997 Affidavit and his more recent story. That is because "I forgot" is not believable, and no amount of creativity can explain away the inconsistency. The lie was deliberate and designed to make this case look more like a fraudulent scheme, when it was nothing of the sort. The Court should be especially lenient in setting aside a default in circumstances where the party who would benefit from the default has already lied to it on a material matter. Plaintiffs have not conducted themselves equitably to warrant discretionary relief from the Court, and their deceptive conduct also places into serious question other representations Plaintiffs would like the Court to believe–representations which ought to be tested in discovery before there is a determination on the merits.

8

## V. INDEPENDENTLY, THE DEFAULT SHOULD BE SET ASIDE BECAUSE PLAINTIFFS HAVE NOT PROPERLY NAMED FIRST BOOK

Plaintiffs misnamed the corporate defendant, purporting to sue "First Book & Film Rights Auction, Inc." which is not an actual Nevada Corporation. The undersigned represents "First Book & Film Rights Auctions, Inc.".

A plaintiff who erroneously misnames a defendant can move to amend the complaint to name the correct defendant. Fed. R. Civ. P. 15(c)(1)(C). The Defendant who has been misnamed then has a due process right to have an opportunity to defend the lawsuit. In *Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000), the Supreme Court held that newly named parties have to be given the opportunity to answer and defend against the amended pleading under Rule 15(a). 529 U.S. at 467 n.1. The remedy for misspelling the name of a defendant is to permit amendment of the pleading such that the proper defendant can be named and then defend himself. *See Ceara v. Deacon,* 916 F.3d 208, 214 (2d Cir. 2019) (where plaintiff intended to sue defendant but misspelled defendant's last name, plaintiff was entitled to amend the pleading with the correct spelling, and the case was remanded to the district court for further proceedings).

Courts sometimes have authority under Fed. R. Civ. P. 60(a) to amend judgments to correct the spelling of judgment debtors who were erroneously named in a lawsuit under circumstances where judgment is entered before anybody catches the mistake. *See Semuks v. Orion Caterers, Inc.*, 2017 WL 9256535, *3, Oct. 27, 2017 (E.D.N.Y.) ("The Second Circuit has held that, **post-judgment**, courts may apply the misnomer rule pursuant to their authority under Federal Rule of Civil Procedure 60(a)") (emphasis added). Rule 60(a) provides for relief from judgments for clerical mistakes and some other limited circumstances. Under Rule 60(a), a judgment can sometimes be amended

9

to reflect the correct name, and because the error is caught post-judgment, the misnamed defendant can suffer the judgment despite being initially mis-named.

The authority to correct judgments under Rule 60(a) has no applicability pre-judgment. The Court should not enter judgment against a defendant knowing that the defendant has been misnamed. Where the mistake in naming a defendant is identified prior to judgment, there is no law nor common sense rationale for entering judgment against the misnamed defendant. Provided it has an opportunity to defend the case on the merits First Book would have no objection to Plaintiffs amending the complaint to correct the initial error (assuming it was an error) and sue the correct party. Regardless First Book is not properly named, and once properly named it has a right to defend itself against all claims and allegations. *See Ceara,* 916 F.3d at 208; *accord Perez v. Sandals Resorts International,* 2015 WL 94233 (E.D.N.Y. Jan 7, 2015).

10

## CONCLUSION

For the foregoing reasons, Defendant First Book & Film Rights Auctions, Inc., sued here incorrectly as First Book & Film Rights Auction, Inc., respectfully requests that the Court issue an order directing the clerk to set aside the Certificate of Default entered by the Clerk's Office on December 14, 2021.

Dated: February 7, 2022

                                            LAW OFFICE OF DANIEL L. ABRAMS, PLLC

                                            *Daniel Abrams*
                                            Daniel L. Abrams Fed. Bar # ct31248
                                            1250 Broadway, 36th Floor
                                            New York, NY  10001
                                            (646) 821-4575
                                            *Attorney for First Book & Film Rights Auctions, Inc., sued here incorrectly as First Book & Film Rights Auction, Inc. and Alvin Abrams*

Case 3:21-cv-01348-KAD   Document 23   Filed 02/07/22   Page 12 of 12

11